# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

ELAINE WILLOW ROSE MOONE                                                                    PLAINTIFF
ADC #139166

v.                                          4:22-cv-873-KGB-JJV

DEXTER PAYNE, Director, ADC; *et al.*                                                     DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.    INTRODUCTION**

Elaine Willow Rose Moone ("Plaintiff") is a transgender prisoner who identifies as female in the Grimes Unit of the Arkansas Division of Correction ("ADC"). She has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants former Warden Moses Jackson, III and current Warden Thomas Hurst violated her constitutional rights at the Grimes Unit by refusing to provide her with private showers, bras, female canteen items, and an orchiectomy.[1] (Doc. 5.) Additionally, she says Defendants are denying her "mail from my LGBT+ family." (*Id.* at 5.)

---

[1] On December 13, 2022, Defendant Payne was dismissed without prejudice. (Doc. 9.)

1

Defendants Jackson and Hurst have filed a Motion for Summary Judgment on the issue of exhaustion. (Docs. 26-28.) Plaintiff has not responded, and the time to do so has expired. Thus, the facts in Defendants' Statement of Undisputed Facts (Doc. 27) are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001). And those facts are supported by the record.

After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be GRANTED, Plaintiff's claims be DISMISSED without prejudice, and this case be CLOSED.

II.     **SUMMARY JUDGEMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will

not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

#### A. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

#### B. The ADC's Exhaustion Procedure

The ADC grievance policy in effect at the relevant time in this case was Administrative Directive 19-34. (Docs. 26-3.) This Directive establishes a three-step process. (*Id.*) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a

3

designated problem solver within fifteen days of the incident. The form must include a brief statement that is specific as to the substance of the issue or complaint to include the date, place, "personnel involved or witnesses," and how the policy or incident affected the inmate submitting the form. (*Id*. § IV(E)(2).) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process" may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties. (*Id*. § IV(C)(4).) And, the grievance form itself reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) The problem solver must respond to the informal resolution within three working days. (*Id*. § IV(C)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance with Warden if it is a non-medical matter and with the Health Services Administrator ("HSA") if it is a medical matter. The grievance is written on the same Unit Level Grievance Form within three working days. (*Id.* § IV(E)(11) and (F)(5)(7).) The Warden or HSA must provide a written response to the formal grievance within twenty working days. (*Id*. § IV(F)(7).)

Third, an inmate who is dissatisfied with the response or does not timely receive a response, must appeal within five working days to the ADC Assistant Director. (*Id*. § IV(F)(8) and (G).) The ADC Assistant Director must provide a written response within thirty working days. (*Id*. at IV(G)(6).) A decision or rejection of an appeal at this level is the end of the grievance process. (*Id*.) Finally, the Directives include the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

4

(*Id*. at § IV(N).)

### C.     Plaintiff's Grievances

The Non-Medical and Medical Grievance Supervisors say in their sworn declarations that after Plaintiff arrived at the Grimes Unit on June 11, 2021, she filed nine grievances mentioning the allegations raised in this lawsuit: GR-21-683, GR-21-704, GR-21-1085, GR-21-1179, GR-22-153, GR-22-178, GR-22-426, GR-22-1059, GR-22-1347,   (Docs. 26-1, 26-2.)  And Plaintiff has not offered any contrary evidence.

In GR-22-01059, Plaintiff said ADC officials were blocking letters sent to her from the L.G.B.T. community. She received a final ruling on October 24, 2022. (Doc. 26-4.)  In GR-22-01347, Plaintiff alleged officials were refusing to provide her private showers and had confiscated sports bras. A final ruling was received on December 9, 2022. (Docs. 26-5.)  Both rulings were received after she commenced this action on September 21, 2021. (*Id*.; Doc. 2.) The PLRA requires an inmate to complete the exhaustion process before filing a lawsuit in federal court.  42 U.S.C. § 1997e(a). Dismissal is mandatory if "exhaustion was not completed at the time of filing." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original). The ADC's grievance policy also reminds prisoners they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit." (Doc. 26-3 at 19.)  Because Plaintiff obtained a final ruling on these two grievances after he filed this lawsuit, they are not properly exhausted.

In GR-21-00683, Plaintiff said she was being denied private showers. ADC officials rejected the appeal without reaching the merits because Plaintiff failed to sign it.  (Doc. 26-6 at 3.) Similarly, ADC officials refused to reach the merits of GR-22-00704, because Plaintiff failed to include the Unit Level Grievance Form (Attachment 1) with the appeal. (Doc. 26-9.)  In GR-22-

01179, Plaintiff said she was not receiving bras. Because Plaintiff again failed to sign the appeal, ADC officials rejected it. (Doc. 26-10 at 3.) Plaintiff failed to comply with the ADC's requirements in Admin. Dir. 19-34 § IV(G)(2) ("To complete the appeal, the inmate must state the reason for the appeal, and must date, sign, and write the inmate's ADC number on the attachment being appealed). To satisfy the PRLA, a prisoner must fully and properly comply with the incarcerating facility's rules. *Jones,* 549 U.S. at 218; *Muhammad v. Mayfield*, 933 F.3d 993, 1001 (8th Cir. 2019) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion"). Although these two requirements might, at first blush, seem somewhat exacting, the signature verifies the appeal has not been forged by another inmate, and the date indicates whether the appeal has been timely filed. *See Prowse v. Washington*, 9 F.4th 836, 839 (8th Cir. 2021) (under the ADC's grievance procedure, it is the "order of submission, not receipt" that determines when an appeal is filed); *Henson v. Nunag*, No. 4:20-CV-1119-DPM-JJV, 2021 WL 1911064 (E.D. Ark. May 12, 2021) (unpublished opinion) (finding an appeal was properly rejected because it did not include a signature or date as required by the ADC's exhaustion policy). Plaintiff has not presented any evidence or argument explaining why she was unable to properly perfect her appeal by signing and dating it. *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 578 U.S. 632, 642-44 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). Therefore, any claims raised in GR-22-00683, GR-22-00704, and GR-22-01179 cannot be considered because the grievances were not properly exhausted.

The remaining grievances, GR-21-01085, GR-22-00178, GR-22-00426, and GR-22-00153

were not properly exhausted because Plaintiff did not name defendants Hurst and Jackson in those grievances. In GR-22-01085 and GR-22-00178, Warden Jackson addressed some of the grievances at Step 2. (Doc. 26-7, Doc. 26-8.)  But, to properly exhaust, Plaintiff was required to file a grievance naming Jackson. To properly exhaust administrative remedies under the ADC's policy, the grievance must name the defendant and raise the same claim asserted in the federal lawsuit. *See Townsend v. Murphy,* 898 F.3d 780, 784 (8th Cir. 2018); *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014).  Although Defendants reviewed and denied Plaintiff's grievance at step two, that is not enough. *See Champion v. Akins*, Case No. 12-2467, 2013 WL 656797 (8th Cir. Feb. 24, 2013) (unpublished opinion) (no exhaustion when a prisoner named two Wardens "as readers" of the grievance but did not state how they "were involved in the grieved incidents, as required by the Arkansas Department of Correction grievance policy"); *Burns,* 752 F.3d at 1141 (improper exhaustion when prison official "was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit). Because Plaintiff failed to do so, GR-21-01085, GR-22-00178, GR-22-00426, and GR-22-00153 are not properly exhausted. Importantly, ADC officials did not bypass these procedural errors and reach the merits of any claims mentioned in these grievances. *See Hammett v. Cofield,* 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits").

Proper exhaustion is "mandatory," and courts cannot consider the merits of a prisoner's claims until that hurdle has been cleared. *Jones,* 549 U.S. at 211.  The only exception to the exhaustion requirement is if administrative remedies were "unavailable" such as when the prison grievance procedure is "so opaque that it becomes . . . incapable of use" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination,

7

misrepresentation, or intimidation." 42 U.S.C. § 1997e(a); *Ross,* 578 U.S. at 642-44; *Townsend,* 898 F.3d at 783. Plaintiff has not presented any facts that would fall under that narrow exception. Accordingly, her claims must be dismissed without prejudice.

Plaintiffs may perceive exhaustion requirements and findings as an unfair, technical mechanism to keep them out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

### IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 26) be GRANTED; Plaintiff's claims against Defendants Jackson and Hurst be DISMISSED without prejudice; and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in form pauperis* appeal of an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 11th day of April 2023.

                                                        _____
                                                        JOE J. VOLPE
                                                        UNITED STATES MAGISTRATE JUDGE